Mr. Singh on behalf of the petitioner. Good morning, Mr. Court. Go ahead, Your Honor. Your Honor, this case is almost similar to the one prior to this, the first case. Well, it's under a different provision, isn't it? The only difference is that there was no annulment. I'm sorry? There was no annulment. They did get a divorce. This particular case does not arise under the fraud provision that we were just talking about. I believe it does. Okay. Okay. Basically, she does come here from the Philippines. She gets married. He goes to the Philippines. He marries her. She comes in approximately eight months later. They did not live together. There was a fight regarding money. He's supposed to pay the airfare back to her aunt. And then several months later, there was a divorce. And the question here is whether at the time when they got married in the Philippines, he entered into the marriage in good faith. It appears pretty clear based on the evidence in the case that she married him in good faith, and the law requires that you look at the time of marriage, not the day after. My notes indicate that they married after two days' acquaintance. That's correct, Your Honor. They lived together for three weeks. And then when she came to Hawaii to live with Mr. Freeman, she refused to leave her auntie's house until he paid for her plane ticket, which had been advanced by the auntie. Do you think that that might give substantial evidence to the immigration judge to make the finding that the marriage was not entered into in good faith? Your Honor, at the time when they got married in the Philippines, they lived together for three weeks, and the marriage was consummated in the Philippines. And the dispute was over the airfare. He takes the position that it was a gift. She takes the position my aunt has spent lots of money, and I want you to reimburse her before I move in with you. And you think that that's a substantial enough dispute to upset a true marriage? Your Honor, the law is at the time when they entered into marriage, that was in the Philippines. At the time they entered into marriage, they lived together for approximately three weeks. Everything was fine. He comes back from the Philippines. He files a petition for her. Approximately eight months later, she's here. And I'm allowed to look at the actions of the parties when they come together in the United States to see what their intent was earlier on? Her intent was to move in with him, provided that he reimburses her aunt. She did not tell him, I do not want to live with you. She did not tell him that I don't want to have a life with you. That was never stated. The only thing that she wanted to make sure was that her aunt who had spent all this money, that she's reimbursed for it. And apparently he did not want to pay, and he left. And then she did try to have further contact with him, and there was no contact. And then she decided, well, this is not going anywhere. Might as well go ahead and file for divorce. I recall, didn't the IJ make a specific adverse credibility finding? Yes, she did indeed. And with respect to Mr. Freeman, he specifically found him to be credible. Isn't that right? That is correct, yes, because there were two different statements given by the petitioner. At one point she claimed that she was afraid of Mr. Freeman. When they had a fight when they were in the Philippines, he had slapped her. In order for you to prevail, would we have to set aside the credibility finding? Well, at the first statement that when she made, she said she was afraid of him, and she also stated that she was not sure that he was able to support her. And at the later statement she indicated that her concern was support and financial. So as to when she indicated she was afraid of him and later she did not, the judge did not go back and say, well, these questions were asked and she did not answer to them. It was just two basic, two different statements. And at the second statement of the questions, she was never asked why you did not indicate at the first statement that you were afraid of him or issue of financial. This particular I.J. went a little bit further. And I think he went on to say not only were there inconsistent statements, but after observing her in the courtroom or whatever it is, the hearing room, and watching her testify, he found that based on her demeanor, she was not credible. He didn't give any, he didn't say, well, she was stumbling over her words, she was sweating, she was twisting and turning. He just said based on my observations of her demeanor, I find that in addition to her inconsistent statements that she's not credible. Now, what do we do with that? You know, on that issue, she just makes a statement, I do not like the demeanor of the respondent or the petitioner. The judge, she did not go in detail as to what portion of the respondent or the petitioner's behavior that disturbed her during her testimony. And that is required under the law. If you're going to find somebody not being credible, you've got to go in detail. And that is on Singh v. Ashcroft. This court itself was the one who indicated that if you're going to find somebody not being credible, you've got to go in detail and tell us why you believe so. She was rolling her eyes or she was perspiring a great deal or she was looking to her counsel to see what she should answer when questions were asked. Is that the kind of thing you require for a credibility finding when the I.J. says her testimony was simply incredible and her explanations do not have the ring of truth? Again, Your Honor, to say somebody's not being credible, it's pretty simple, unless you go in detail and say the reason I find this person not being credible is, A, looking at counsel, 2, taking a long time to give an answer or something along the line. There was no such finding. You cited a case that holds that, the credibility findings are not valid unless they're precisely described as to their basis. Correct, Your Honor. And the case is? Singh v. Ashcroft. It's a 2002 Westlaw 1968585. Also Shaw, S-H-A-H v. I-N-S 220 Federal 3rd 1062. Brief? Yes, Your Honor. All right. Thank you. Unless the Court has any other questions. Bouncing back to rebuttal? Yes, Your Honor. Okay. Thank you. Good morning. May it please the Court. David Downhamer again on behalf of the Respondent, the Attorney General. The Board's conclusion that Mrs. Freeman provided false testimony is supported by substantial evidence of the record, and her generalized arguments on appeal do not compel a contrary conclusion. Because she provided false statements, she was statutorily precluded from establishing the good moral conduct required for suspension of deportation and for voluntary departure. Let's go back to the very beginning. We don't have the same jurisdictional problems in this case as we did in the other one, do we? No, Your Honor. This case falls under the transitional rules, and under the transitional rules specific sections were committed to the discretion of the Attorney General. The decision with regard to the false testimony and does not fall, that's under INA section 216C4, the discretionary waiver, was not listed in the transitional rules, and therefore you don't have the same jurisdictional issue in this case. So we're basically back to substantial. Substantial discretion or substantial evidence. Correct, Your Honor. What do we do with this, you know, the credibility determination here? In two respects. I'm concerned, one, the I.J. here went beyond just saying I find her to be not credible because she made inconsistent statements, you know, comparing her pre-hearing statements with statements she may have made to the immigration officers or in her application for suspension or whatever. Oftentimes you see they point to inconsistencies and make statements. But he went on here to say I want the Board to know that I've observed her carefully and I find her, looking at her demeanor, that I find her just not credible. What do we do with that sort of general statement? He doesn't point to anything like this Judge Bea was just saying. Correct, Your Honor. She was looking for help from her counsel. She was nervous. She was stumbling with her words. I think from that statement you can gather that the immigration judge observed her and found that from her actions and her demeanor that he did not find her to be credible. He doesn't provide any further detail as to what those exact actions were or what may have led him to that particular conclusion. But he does provide the Court with several examples of inconsistencies in her testimony. And based upon that information. In a way he was saying something more specific as I read this. He was saying what I could tell. He seemed to be saying I could tell that she was lying, that there were these inconsistencies. And what I could tell from observing her was that they were lies rather than mistakes. So it was a little different. It wasn't exactly saying I could tell from looking at her that she was lying. I could tell from the contradictions that there was something wrong here. And then by considering how she seemed I decided that they were lies. There's still no explanation for how he knew that. But it's a slightly more discreet thing I guess. Yes, Your Honor. And I guess it would go to the deference that the Court at the appellate stage should. Although it's fairly unusual in an INS case to have this sort of just mention of credibility, of demeanor with no indication of what he's talking about. I think he was providing additional support for his already supported conclusion that she was not credible. I mean, he went through and explained various inconsistencies with regard to her claims. He explained that she claimed to refuse to live with Mr. Freeman because she had not paid her aunt for travel expenses. However, she could not provide any sufficient explanation for why such a minor issue would cause such a huge marital rift. He noted that that explanation, that that claim was inconsistent with her prior sworn statement, that she was actually afraid of him and thought he might hit her and thought that he might not be able to support her. To back up for a minute, what's most disturbing about this case is that it's taken 16 or 17 years to get to this point, right? From the point at which the INS first tried to deport her or something like that? And meanwhile, she's established a life. She's had kids. She's so on. Is there no relief that's available at this point? We're now going back to the very beginning. And because of what happened at the very beginning, there's absolutely no relief available for her. I'm not aware of any subsequent relief that she could seek outside of her current proceedings. The delay in time from the initiation of the proceedings to the point where it reached this court, while extended, shouldn't be held against the agency. In effect, by coming here illegally in the first instance, she started the consequences rolling. People's lives change. Excuse me, Your Honor? People's lives change over time. I understand, Your Honor. And the delay at times will likely work an additional hardship upon a petitioner. However, that additional hardship is not something that this court should examine with regard to whether the immigration judge's decision in this case is supported by the system. Let me ask you this. What are the consequences? I've asked this question on how many times a different counsel for the government. What are the consequences if not granted her voluntary departure? If an alien is granted voluntary departure, then they may be able to leave and then not forfeit the ability to come back into the United States or not be subject to a provision that would require them to wait a certain period of time before reapplying for admission to the United States. And so to the extent that somebody may be granted voluntary departure, they may be able to avoid those delays in trying to return to the United States. So if she had been granted voluntary departure and had left the country, what would be the mechanism for her to regain admission to the United States? Then she would have to apply for another visa to come to the United States under whatever basis she may be eligible to make that application. Could she reapply through her new husband? It's possible, however, she may be subject to a bar based on the finding that she entered into a fraudulent marriage previously and entered into the United States. Is that an absolute bar or is it? I believe it's under Section 204C. I'm not absolutely sure whether it's an absolute bar. Or is there some discretion for the attorney general? There's some discretion, but I'm not positive, Your Honor. But nonetheless, she couldn't do that if she's not granted voluntary departure. That's correct, Your Honor. But she's not eligible for voluntary departure because of the – she's statutorily precluded from showing that she had good moral conduct during the time period in question because of her false testimony before the – But it all turns out whether or not she's credible, correct? It turns out – What if we were to disagree with you in your credibility argument and determine and conclude that there is not substantial evidence to uphold the IJ's credibility determination? How could you say that her testimony is false? If there's insufficient evidence to show that she was not credible and this Court finds that, then she may be eligible for a grant of voluntary departure. We'd have to remand that, wouldn't we? Yes, Your Honor. That, again, would be a discretionary determination whether she should be granted the voluntary departure. She would still be ineligible for suspension of deportation because she falls under the stop-time law. Right. And – Let me ask you this. Even if she were credible, taking all the evidence that was before the IJ, would it still support the IJ's decision? Even if she were deemed credible? Yeah, deemed credible. Could the IJ still determine – Based on the testimony of Mr. Freeman and everything else. Yes, Your Honor. The immigration judge could still come to the conclusion in his discretion to deny voluntary departure. There's no right to voluntary departure. And it's up to his discretion whether it should be granted or not. In this particular case, though, he found that she was statutorily precluded from showing good moral conduct because of – good moral character because of the finding that she had presented. Right. I understand that. Counsel, could you please comment on Mr. Singh's citation of those two cases, Singh v. Ashcroft and the Shaw case? Do you think that to be valid, credibility findings have to specify the ground upon which the IJ made the credibility finding? This Court has held that an adverse credibility determination has to be based on inconsistencies that are shown in the record. And in this – It has to be based on specific and cogent reasons. Right? I mean, more generally. It could be inconsistencies. It could be demeanor reasons if they're explained, but they have to be specific and articulated. Right, Your Honor. And in this case, there were specific inconsistencies that were articulated by the immigration judge. But not the demeanor part. The demeanor part was never articulated. It seems to me we have to just wash that out. The demeanor part, he just noted that from his observations, and he did not provide any further information. So it seems to me we have to operate without that. We just have to see whether the rest of it supports it. I'm not aware of – I would argue that the case law doesn't require that he provide detailed information as to exactly what his demeanor-based findings were based upon. However, that finding in conjunction with the record – That becomes unreviewable. I mean, for all we know, he thought she was not credible because she, I don't know, she blew her nose. I mean, we just have no idea. It just becomes unreviewable at that point. I think it becomes more difficult to review. However, from the context of the statement when it's made and from the decision, you know, in its totality as well as the record, it can be seen as just further support for the immigration judge's findings that she was not credible. You don't agree with Mr. Singh that it's required that she say – that the immigration judge say she was rolling her eyes, she was perspiring, she was looking to counsel for lifelines, that sort of thing? I agree that it would have been more helpful to this Court if he had provided that information. I don't agree that it is required. The concern is that a general statement like this would tend to make the credibility determination unreviewable. I don't think it makes it unreviewable. What it does is heighten the deference that this Court should grant to the credibility determination, at least with regard to his statements as to his observations of her demeanor. However, there's substantial evidence in the record which supports his findings based on the other inconsistencies in the record, and those are all noted here. This is my – I should probably understand this, but I don't. And this is slightly changing the subject. How does the statute work? First, there is a provision that is the substantive marriage fraud provision, and then there's a waiver provision, right? Because there was a divorce within two years, and then – and so she has to make a joint – they have to make a joint request after the conditional period. They didn't do that. So do both things operate? In other words, is this a two-stage review? What are we doing here? This case is different from the previous case in that she fell under this rubric of when she came in, she was not married for more than two years when she arrived in the United States. So she was granted conditional permanent resident status. If during that two-year period she is then divorced, that status is terminated. And Petitioner does not argue that the termination of that status was incorrect, and it clearly was based upon their divorce within the two-year period. She then has to apply under the regulations. The normal course of proceedings would be the alien would come to the United States. After the two-year period, within 90 days, she's supposed to apply for the waiver of the conditional permanent resident status. And it's supposed to be a joint petition with herself and her spouse. However, there is a provision that allows for the waiver of the joint petition. But not if the marriage wasn't in good faith. So we're back in the same spot again. It's really in a man's tent. Right. And the standards are the same in either instance? Excuse me? The standards are the same whichever way you go into it. What's a good faith marriage? It's slightly different because with regard to the waiver issue, the burden is upon her to show that it was, in fact, a good faith marriage from the very beginning. And that the provision for her coming to apply for the waiver is confusing because it doesn't appear that it should fix the issue of the divorce during the two-year period. However, the board has read it to include, to allow a petitioner such as the one in this case to apply for the waiver anyway. And whether it will be granted or not is really a discretionary decision by the Attorney General for which this Court should review as an abusive discretion, rather than a substantial evidence review with regard to a decision as to false testimony in particular. Although here we have false testimony. They rely on the false testimony with respect to voluntary departure. Correct, Your Honor. So with regard to the request for suspension of deportation and the request for voluntary departure, it's the decision by the immigration judge that there was false testimony, which he used to find that she was statutorily precluded from showing good moral character and therefore was ineligible for either voluntary departure or suspension. With regard to the waiver, it's a more deferential standard of review in that she has to show that she's eligible for this waiver. I would note that there are two possible provisions, and that would be a hardship waiver or the good faith waiver. With regard to the hardship waiver, it's limited in time to the time when she was here as a permanent resident legally. Under conditional status. Correct, under the rubric of the initial marriage. And therefore, it would not take into account the subsequent marriage or children. She's basically with a good faith waiver. Correct, Your Honor. Her child was born after the divorce? Yes, Your Honor. And after the termination of status? Yes, Your Honor. Because Ms. Freeman provided false testimony in an attempt to support her claims of a bona fide marriage, she's statutorily barred from establishing good moral character. She's also barred under the stop time law from establishing seven years' continuous physical presence. And her arguments on appeal fail to establish that the Board abused its discretion in this matter. The petition should thus be denied. Thank you for your time, Your Honor. Thank you, counsel. What you're saying, I believe you had a minute or two left. Thank you. On the issue of voluntary departure, because the judge found Mrs. Freeman to be lying, therefore she claimed and she found her that she was not a person of good moral character. Because she was not a person of good moral character, voluntary departure was denied. So if you go back and look at the transcript of the case and the judge's ruling, the judge did not go in detail about credibility. The credibility and... Well, he actually did go into a lot of detail about credibility. And then at the end of it, he said, and not only that, but I looked at her. But the rest of it, I mean, he did give a bunch of other reasons, specific reasons having to do with contradictions, which you can't see on the record. Well, it was not lies. It was miscommunication of mistakes when she was trying to present her case. Mrs. Freeman comes to America. She gets divorced. Then she files the waiver based on good faith. In the meantime, before she files the waiver, she was put into proceedings, and then that was dismissed. She goes before the immigration, she makes statement number one, and then she makes statement number two, which are both correct. Statement number one does not talk about certain things about statement number two. I didn't hear that. Statement one and statement number two, they do not talk about the same issues, but those were the issues in their relationship. Well, there's all this confusion about why, and I just reread it again, why he didn't pick her up at the airport. She said, I called him the day before. Then she says, I couldn't call him and I couldn't write to him. Then she says, I called him, but he didn't come. Then she says, I didn't call him until the next day. I mean, there's certainly a lot of different stories there. There were a lot of different reasons why she did not do what she's supposed to do. I agree that there were statements in the file which says that she did not call. Then she did call when she got here. He was not home. She did call him the next day, and they did meet. They met, and after their meeting, the issue was the payment. She did talk to him the day before. But she talked to him the day before, but she didn't tell him. It seems to me that she, reading it myself, that she did tell contradictory stories. So then what? Sometimes she said she called him the day before. Sometimes she said she hadn't talked to him for a long time because she couldn't call him, etc. So she did tell different stories. As to not calling him, she's coming from the Philippines, and maybe she did not have access to a telephone. I don't know. But she did call him at some point. She did call him when she got here. No, she also said she spoke to him the day before she left at one point. She may have stated that. But then what? I mean, if we agree that she was telling different stories, then what in terms of the item? Well, as a – Maybe not if that's the world's most important thing, but she – Correct. There were some small discrepancies here and there, no doubt about it. But again, the law is, as indicated before, the judge must come out and state in detail what she believes not to be credible. And the judge failed to do so. Furthermore, I believe this court does have jurisdiction based on the transitional rule. Thank you. Thank you, Mr. Singh. Thank you again. Thank you very much. This case will be submitted. Thank you for your audience.
judges: Paez, Berzon, Bea